**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
GEORGE D. HOUSER,                               )
                                                                )
                              Plaintiff,               )
                                                                )
                 v.                                           )              Civil Action No. 16-1142 (RBW)
                                                                )
DIANA CHURCH, *et al.*,                         )
                                                                )
                              Defendants.          )
_____ )


## <u>MEMORANDUM OPINION AND ORDER</u>

George D. Houser ("the plaintiff") brings this civil action under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 (2018), against the Internal Revenue Service ("IRS"

or "the defendant").[1]  He filed his Complaint (ECF No. 1, "Compl.") on June 2, 2016.[2]  Count

One of the Complaint survived the Defendant's Motion to Dismiss (ECF No. 9), and now

pending before the Court is the Defendant's Motion for Summary Judgment (ECF No. 66).  For

the reasons discussed below, the Court grants the motion in part and denies the motion in part

without prejudice.[3]

---

[1] The Court's June 22, 2016 Order (ECF No. 5) dismissed Diana Church, Cassandra E. Knight-Page, and Edward T. Killen as party defendants.  For administrative convenience, however, the caption of the case remains unchanged.

[2] The original complaint bears a date stamp indicating that the Clerk of the Court received it on June 2, 2016.  Compl. at 3 (page number designated by the plaintiff). The Court will therefore treat the complaint as if it had been filed on that date.

[3] The plaintiff's Third Motion for an Extension of Time to Answer Defendant's Motion for Summary Judgment (ECF No. 73) will be denied as moot.

# I. BACKGROUND

According to the plaintiff, he was "false[ly] convicted of Health Care and Tax Fraud . . . and is serving" a 20-year term of imprisonment. Compl. ¶ 25. The United States Court of Appeals for the Eleventh Circuit, however, affirmed the plaintiff's criminal convictions and the sentences imposed by the United States District Court for the Northern District of Georgia. The Eleventh Circuit summarized the outcome of the District Court proceedings as follows:

> Following a four-week bench trial, George D. Houser was convicted of one count of conspiring with his wife, Rhonda Washington Houser . . . , to commit health care fraud, in violation of 18 U.S.C. § 1349, of eight counts of payroll tax fraud, in violation of 26 U.S.C. § 7202, and of two counts of failure to timely file income tax returns, in violation of 26 U.S.C. § 7203. The district court sentenced Mr. Houser to 240 months' imprisonment and ordered him to pay nearly $7 million in restitution to Medicare and Medicaid and more than $870,000 to the Internal Revenue Service[.]

*United States v. Houser*, 754 F.3d 1335, 1337 (11th Cir. 2014).

## A. Procedural History

The IRS filed its summary judgment motion (ECF No. 66) on July 29, 2019. On August 5, 2019, the Court issued an Order (ECF No. 68) advising the plaintiff of his obligations under the Federal Rules of Civil Procedure and the local civil rules of this Court to respond to the motion. Specifically, the Order advised the plaintiff that if he did not file an opposition by August 26, 2019, the Court may enter judgment in the defendant's favor if the "Court satisfies itself that the record and any undisputed material facts justify granting summary judgment." Order, *Houser v. Church*, No. 16-CV-1142 (D.D.C. Aug. 5, 2019) (quoting *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (citing Fed. R. Civ. P. 56(e)(3))).

The plaintiff requested two extensions of time to respond to the defendant's summary judgment motion (ECF Nos. 69, 72), and both requests were granted by the Court. The Court's

January 22, 2020 Minute Order advised the plaintiff that no further extensions would be granted

absent a showing by the plaintiff of physical or mental incapacitation verified by a medical

professional.  The plaintiff has now filed a third request for an extension of time (ECF No. 73),

explaining that the prison's law library has been closed entirely, or its hours are limited, as a

measure to prevent spread of the coronavirus.  The Court will deny the plaintiff's request, as it

does not comply with the January 22, 2020 Minute Order.[4]

### B. The Defendant's Asserted Facts

#### 1. The Plaintiff's FOIA Request

The plaintiff's FOIA request to the IRS arrived by letter dated June 28, 2015.  Statement

of Material Facts (ECF No. 66-2, "SMF") ¶ 5.[5]

#### a. FOIA Request – Part 1[6]

The first part of the plaintiff's FOIA request seeks taxpayer records.  *Id.*  Regarding

himself, the plaintiff seeks Integrated Collection System transcripts for the period beginning

January 1, 1977.  *See id.* ¶ 5.a.  He seeks similar information about the following corporate

entities to which the plaintiff was affiliated: Forum Healthcare Group, Inc.; Forum Group

Management Services, Inc.; Forum Group at Mount Berry Nursing & Rehabilitation Center,

LLC; Forum Group at Moran Lake Nursing & Rehabilitation Center, LLC; and Forum Group at

---

[4]  On August 4, 2020, the plaintiff filed an "Amendment to Affidavit One, Letter to the National Archive[s] and Record[s] Administration" (ECF No. 76).  Apparently, on or about July 25, 2020, the plaintiff submitted a FOIA request to the National Archives for records originating from the IRS and pertaining to the plaintiff and the healthcare facilities with which the plaintiff was affiliated.  *See id.*, Exhibit ("Ex.") A.  Resolution of the plaintiff's July 25, 2020 FOIA request has no bearing on the outcome of this case.

[5]  *See* Compl., Exhibit ("Ex.") 1 (ECF No. 1 at 26-41).

[6]  *See* Compl. (ECF No. 1 at 36).

Wildwood Park Nursing & Rehabilitation Center, LLC (collectively, "Five Corporate Entities").
*See id.*[7]

### b. FOIA Request – Part 2[8]

The second part of the plaintiff's FOIA request seeks "[a]ll records of the statutory and
program protocol regulating the giving of testimony respecting the payment of taxes, the
evaluation of financial statements, and the assessment of willfulness and fraud, including
technical rules, specific instructions and other documented protocol." *Id.* ¶ 5.b.

### c. FOIA Request – Part 3[9]

Third, the plaintiff seeks IRS records describing "professional conduct in the giving of
testimony, evaluation of financial statements, and the assessment of fraud, issued because of,
about, or concerning" four specific matters. *Id.* ¶ 5.c.  Those matters are: (1) a comprehensive
personal financial statement the plaintiff sent to the IRS on February 23, 2005; (2) Revenue
Officer Odell Justice's referral of the plaintiff for fraud on March 2, 2005; (3) Revenue Officer
Justice's referral of the plaintiff for the search of his offices; (4) Revenue Officer Justice's
testimony; and (5) IRS Agent Marilyn Igbalajobi's testimony. *Id.*[10]

Through subsequent correspondence, *see id.* ¶¶ 7-13, the plaintiff perfected his FOIA
request by letter dated December 18, 2015, *see id.* ¶ 14.[11]   The IRS's January 12, 2016 response

---

[7]  *See* Compl., Ex. A to Ex. 1 (ECF No. 1 at 35).

[8]  *See* Compl. (ECF No. 1 at 36-37).

[9]  *See* Compl. (ECF No. 1 at 38).

[10]  The plaintiff identifies Ms. Igbalajobi's first name as Marion, but her first name is actually
Marilyn.  *See* Declaration of Marilyn O. Igbalajobi (ECF No. 66-15 at 1).

[11]  *See* Compl., Ex. 8 (ECF No. 1 at 138-40) (December 18, 2015 letter); *see id.*, Ex. 9 (ECF No.
1 at 141-64) (attachments to December 18, 2015 letter).

denied the plaintiff's request for expedited processing, *see id.* ¶¶ 14-15, and on February 24, 2016, the IRS released to the plaintiff 196 pages of records responsive to Part 1 of his FOIA request, *see id.* ¶¶ 17-18.  Because a requester could obtain copies of return transcripts and employment records by means other than a FOIA request, the IRS did not respond to this portion of Part 1 of the request.  *See id.* ¶ 19. And, the IRS did not respond at all to Parts 2 and 3 of the plaintiff's FOIA request before this litigation was initiated.  *Id.* ¶ 20.

### 2. Searches for and Releases of Responsive Records

#### a. Records Responsive to Part 1 of the Plaintiff's FOIA Request

William M. Rowe, an attorney with the Office of Chief Counsel, Procedure & Administration, Branch 7 of the IRS, "coordinat[ed] with the [United States] Department of Justice" in defending against this litigation.  Declaration of William M. Rowe (ECF No. 66-8, "Rowe Decl.") ¶ 1.  On review of case history notes made by the Disclosure Specialist to whom the plaintiff's FOIA request was initially assigned, and upon review of the plaintiff's Complaint, Rowe determined that additional searches were necessary.  *See* SMF ¶¶ 26, 29-30; Rowe Decl. ¶ 22.  He "directed and coordinated all the searches the IRS conducted post-suit."  Rowe Decl. ¶ 2.

#### *i.* Integrated Collection System Records

#### Pre-Litigation Search of the Integrated Management System

The IRS's initial search occurred before this litigation commenced.  *See* SMF ¶¶ 25-27. It consisted of a query of the Integrated Collection System using either the subject's Employer Identification Number ("EIN") or Social Security Number ("SSN") as the search term, selecting the options of "transcripts" and "complete" for a taxpayer's complete transcript.  *See id.* ¶ 28. This search yielded 196 pages of responsive records designated Bates numbers 1-196.  *Id.* ¶ 18.

Of these 196 pages, the IRS released 160 pages in full and released 36 pages in part, having redacted certain information under FOIA Exemptions 3, 5 and 7(A). *Id.*

The Integrated Collection System retains transcripts for three years after processing, or when they are "no longer needed for administrative, legal, audit, or other operational purposes, whichever is sooner." *Id.* ¶ 28. The pre-litigation search "only included events beginning in the year 2006," however, *id.* ¶ 31, and the plaintiff seeks records generated prior to 2006, *see id.* ¶ 5.a.

### Searches of the Criminal and Collection Case Files

Amanda H. Stanwood is a former Special Agent in the IRS Criminal Division whose duties "included investigating potential criminal violations of the Internal Revenue Code and related financial crimes." Declaration of Amanda H. Stanwood (ECF No. 66-16, "Stanwood Decl.") ¶ 1. She has "[a] thorough understanding of the procedures for maintaining records related to an investigation," *id.*, such as "reports, various forms, correspondence, memoranda, case summary files, clippings and other background information, collected exhibitory materials (e.g. ledgers, checks, deposit slips, journals, etc.) and other case related documents generated or received," *id.* ¶ 6. She also knows how to search for records related to an ongoing or closed investigation. *Id.* ¶ 1; *see id.* ¶ 7. She states that she was involved in the plaintiff's investigation from 2006 through September 2015. *Id.* ¶ 5. Stanwood "was in possession of [the] plaintiff's paper criminal investigation file, which consisted of sixteen (16) banker's boxes of records," and the "paper civil collection case file which was forwarded to the IRS Criminal Investigation Division by Revenue Officer Odell Justice along with [the] plaintiff's criminal referral." *Id.* ¶10.

Stanwood searched the criminal case file and the collection case file that now-retired Revenue Officer Justice had compiled. SMF ¶ 32. She "located 38 pages of Integrated

Collection System transcripts in the paper criminal case files" but no others. *Id.* ¶ 33.
Ultimately, of these 38 pages of records, designated Bates Nos. 197-234, the IRS released 8
pages in full and released the other 30 pages in part, relying on FOIA Exemptions 3, 6 and 7(A).
*Id.* ¶ 35.

### Records Retrieved from the Federal Records Center

Given the plaintiff's interest in acquiring his own transcripts dating back to 1977, *id.* ¶
36, and given that the Integrated Collection System would not have information dating back that
far, *id.*, the IRS ordered that she be provided the "plaintiff's and the Five Corporate Entities' tax
administrative files from the Federal Records Center to see whether [they] [] might contain paper
copies of the Integrated Collection System transcripts," *id.* ¶ 37.  In order to locate administrative
files, the Integrated Data Retrieval System ("IDRS") must be searched, *id.* ¶ 38, "an electronic
system that consists of databases and operating programs that support IRS employees working
active cases within each function across the entire organization," *id.* ¶ 39.  IDRS "manages data
stored on the Individual Master File or Business Master File, allowing IRS employees to take
specific actions on taxpayer account issues, track status, and post transaction updates back to the
Individual Master File or Business Master File."  *Id.* ¶ 40.

IDRS is searchable by taxpayer identifiers, and particular information can be retrieved
"through the use of specialized command codes."  *Id.* ¶ 39.  The IRS therefore queried IDRS
using the plaintiff's taxpayer identification number ("TIN") and each of the Five Corporate
Entities' TINs, as well as Command Codes BMFOLT (for review of the Five Corporate Entities'
accounts) or IMFOLT (for review of the plaintiff's account).  *See id.* ¶ 41.  Search results
revealing Transaction Code 290 for Collection or Transaction Code 300 for Examination also
revealed a Document Locator Number ("DLN") for a corresponding administrative file.  *See id.*

The IRS then prepared a records request for each DLN and sent the requests to the Federal Records Center.  *See id.*  Upon review of records retrieved from the Federal Records Center, the IRS found no records responsive to the plaintiff's request for Integrated Collection Transcripts. *Id*. ¶ 42.

### *ii.* Requests for Return Transcripts

Prior to the initiation of this litigation, the IRS did not process the plaintiff's request for return transcripts because there is a procedure for their acquisition other than through the FOIA, *see* Internal Revenue Code ("IRC") § 601.702(d).  *See* SMF ¶¶ 19, 44.  Nevertheless, the IRS subsequently conducted searches for return transcripts for the plaintiff and the Five Corporate Entities.  *See id.* ¶¶ 43-44.

Return transcripts are available electronically for the current year and the prior three tax years.  *Id.* ¶ 46.  However, account transcripts can be retrieved for earlier years for which return transcripts are not available, provided the account "is active on the IRS Master File."  *Id.*  The IRS retrieved return and account transcripts for the plaintiff and the Five Corporate Entities for tax years 2003-2015 from its Transcript Delivery System ("TDS"), using the subjects' names and TINs as search terms.  *See id.* ¶¶ 47-48.  This search yielded 315 pages of responsive records, including information contained in three IRS forms.  *Id.* ¶ 49.

The three IRS forms are the following: Form 1065 (U.S. Report of Partnership Income) that "report[s] the income, gains, losses, deductions, credits, and other tax items from the operation of a partnership."  *Id.*  Form 1120 (U.S. Corporation Income Tax Return) that "report[s] [a corporation's] tax liability based on [its] income, gains, losses, deductions, credits, and other tax items."  *Id.*  And Form 941 (Employer's QUARTERLY Federal Tax Return) that reports a corporation's "income taxes, social security tax, or Medicare tax withheld from

employee[s'] paychecks, and . . . the employer[s'] portion of social security or Medicare tax." *Id.* The IRS released to the plaintiff the return and account transcripts, designated Bates page numbers 235-549, in their entirety. *Id.* ¶ 50. The IRS did not locate paper copies of return transcripts in the administrative files retrieved from the Federal Records Center. *Id.* ¶ 51.

When the IRS realized that there were no responsive records discovered pertaining to the Wildwood Park and Moran Lake facilities during its initial searches, *id.* ¶ 52, the IRS performed another search of TDS, *id.* ¶ 53. This search yielded 23 pages of return and account transcripts, *id.*, designated Bates page numbers 684-706, *id.* ¶ 54, for the Wildwood Park and Moran Lake facilities, *id.* ¶ 53. The IRS released these 23 pages to the plaintiff in their entirety. *Id.* ¶ 53.

### *iii*. Employer Payroll Records

Even though employer payroll records are excluded from the FOIA's processing requirements by regulation, *see* IRC § 601.702(d), the IRS nevertheless conducted a search of the Information Returns Master File ("IRMF"), *see* SMF ¶¶ 56-57. Electronic payer transcripts would be responsive to this portion of the plaintiff's FOIA request because they would include the Five Corporate Entities' information returns, such as Forms 1099 and W-2. *Id.* ¶ 57. To retrieve such information, the IRS queried the IDRS using command code IRPTR and the entities' tax identification numbers. *See id.* This search yielded 55 pages of responsive records, designated Bates page numbers 598-652, dating back to 2007. *Id.* ¶ 58. The IRS released these 55 pages in their entirety to the plaintiff. *Id.* ¶ 59. Any such earlier responsive documents were not in the IRS's possession because "[t]he IRS retains IRMF electronic payer transcripts dating back only ten years, and . . . requests for any earlier transcripts . . . [must] be directed to the Social Security Administration." *Id.* ¶ 58.

The IRS then searched for "original copies of the Five Corporate Entities' Forms 941." *Id.* ¶ 60.[12]  The results of this search of IDRS, using the EINs for the Five Corporate Entities and command code BMFOLT (to review the entities' accounts), showed Transaction Code 150 for the filing of a Form 941.  *Id.* ¶ 61.  Consequently, the IRS identified DLNs for the returns, which in turn were used to retrieve records from the Federal Records Center.  *See id.* ¶¶ 61-62.

The Federal Records Center located copies of the Forms 941 for the following tax periods: (1) Forum Group at Moran Lake Nursing & Rehabilitation Center, LLC: 2005-3; and 2005-6; (2) Forum Group at Mount Berry Nursing & Rehabilitation Center, LLC: 2004-12; 2005-3; 2005-6; 2005-9; 2005-12; and 2006-9; and (3) Forum Group Management Services, Inc.: 2005-3; 2005-6; and 2006-6.  *Id.* ¶ 66.  These 26 pages of records, designated Bates page numbers 658-683, were released to the plaintiff in their entirety.  *Id.* ¶ 71.  "For the tax periods for which Forms 941 were not provided," *id.* ¶ 68, those records "had been destroyed in the ordinary course pursuant to the [IRS's] Record Control Schedule," *id.*; *see id.* ¶ 67.

In a further effort to find Forms 941 for other time periods, IRS Special Agent Stanwood searched her computer's hard drive, where she would have saved information pertaining to the plaintiffs' criminal investigation, and located 30 pages of responsive records.  *Id.* ¶ 73.  All of these pages, designated Bates page numbers 550-579, were released to the plaintiff in their entirety.  *Id.* ¶ 74.  Additionally, Stanwood searched for employer payroll records in the criminal case file.  *Id.* ¶ 75.  She found 73 pages of Forms 941 and 5 additional pages of return transcripts. *Id.* ¶ 76.  All of these Forms 941, designated Bates page numbers 2020-2092, were also released to the plaintiff in their entirety.  *Id.* ¶ 78.  Four of the five pages of return transcripts, designated

---

[12] The Federal Records Center had not responded to IRS's first request for Form 941s, so the IRS submitted a second request for them.  SMF ¶¶ 61-62.

Bates page numbers 653-657, were also released to the plaintiff in their entirety, *id.* ¶ 77, and the one page that was not, was redacted based on FOIA Exemption 6, *id.*

A search of the plaintiff's civil collection case file for employer payroll records yielded 18 pages of Forms 941.  *Id.* ¶ 79.  All of these records, designated Bates page numbers 580-597, were released to the plaintiff in their entirety.  *Id.* ¶ 80.

### b. Records Responsive to Part 2 of the Plaintiff's FOIA Request

The IRS did not consider Part 2 of the plaintiff's FOIA requests as "a valid FOIA request . . . given that it asks for [the agency] to perform legal research[.]"  SMF ¶ 30.  Therefore, the IRS did not conduct a separate search for records potentially responsive to Part 2.  *Id.*  Instead, potential custodians of records responsive to Parts 1 and 3 were instructed "to look for any records potentially responsive to Part 2 . . . as they performed [their] searches" for records responsive to Parts 1 and 3.  *Id.* ¶ 30.  None were found.  *Id.*

### c. Records Responsive to Part 3 of the Plaintiff's FOIA Request

Described below are the searches conducted by IRS personnel for records responsive to the plaintiff's FOIA requests for: (1) the comprehensive personal financial statement the plaintiff sent to the IRS on February 23, 2005; (2) Revenue Officer Odell Justice's referral of the plaintiff for committing fraud on March 2, 2005; (3) Revenue Officer Justice's referral of the plaintiff for the search of his offices; (4) Revenue Officer Justice's testimony; and (5) IRS Agent Marilyn Igbalajobi's testimony.

#### i. Searches Conducted by Special Agent Amanda Stanwood

Stanwood searched the plaintiff's criminal case file and her computer's hard drive using "George Houser" as the search term and found 250 pages of responsive records.  SMF ¶¶ 78-79.  They included "copies of briefing documents related to a search warrant executed in November

2005, the application and affidavit in support of the application for the search warrant, inventory listings of items seized at the search warrant site, [the] plaintiff's criminal referral and associated fraud narrative, [the] plaintiff's complete financial statement, and a summary of testimony of Internal Revenue Agent Marilyn Igbalajobi." *Id.* ¶ 91.  Most of these pages, designated Bates page numbers 707-956, were provided to the plaintiff, but the IRS withheld 16 pages in full, relying on FOIA Exemption 5, and withheld 30 pages in part, relying on FOIA Exemptions 3, 6, 7(C) and 7(E).  *Id.* ¶ 93.

Stanwood also searched in Microsoft Outlook for current and archived email messages. *Id.* ¶ 95.  "First, she reviewed the records in her current and archived inbox folders for all emails . . . received from or sent to Odell [J]ustice, Vivian Dunn, or Marilyn Igbalajobi," with whom she worked on the plaintiff's case.  *Id.*  Second, Stanwood reviewed email messages in a folder labeled "George Houser," where she stored "any substantive emails relating to [the] plaintiff's criminal investigation."  *Id.*  These searches yielded 177 pages of responsive records.  *Id.* ¶ 97. Most of these 177 pages, designated Bates page numbers 957-1133, were also provided to the plaintiff, except for 25 pages that were withheld in part by the IRS, relying on FOIA Exemptions 3, 5, 6, 7(A) and 7(C).  *Id.*

### ii. Searches Conducted by Internal Revenue Agent Marilyn Igbalajobi

Marilyn O. Igbalajobi is "an Internal Revenue Agent in the . . .  Small Business/Self Employed Division's Employment Tax Program in Decatur, Georgia."  Declaration of Marilyn O. Igbalajobi (ECF No. 66-15, "Igbalajobi Decl.") ¶ 1.  Her duties include "participating, assisting, or advising in the examination of cases involving employment tax matters."  *Id.*  She explains in her declaration that she "was assigned to [the] plaintiff's criminal matter on or about June 10, 2007[,] when the IRS Criminal Investigation Division requested tax computations

related to employment taxes." *Id.* ¶ 4.  In regards to her involvement in the plaintiff's case, Igbalajobi explains that she assisted "in analyzing employment tax returns and information returns filed with the IRS, as well as calculating the Social Security and Medicare wage adjustment subject to tax, the income tax withholding, the Social Security and Medicare tax, and the total employment tax liability with respect to the" Five Corporate Entities.  *Id.*  Her involvement ended, she explains, in February 2012, after she "provided testimony regarding these matters at [the] plaintiff's trial in federal district court."  *Id.*

Igbalajobi "typically does not maintain a file for the case," but would "be in possession of paper or electronic copies of employment tax returns and information returns as are needed to perform [] tax computations."  SMF ¶ 100.  In addition, she would "receive[] or create[] electronic documents that are saved to her computer's hard drive or in Microsoft Outlook as she prepare[d] tax computations."  *Id.*

Searches conducted by Igbalajobi "of her file cabinet for paper records" and of "electronic files saved to her computer's hard drive" yielded no responsive records.  *Id.* ¶¶ 101-02.  A search of Microsoft Outlook, however, yielded 13 pages of emails and email attachments . . . , including a copy of the Form 6544, Request for Cooperating Examiner, prepared by the IRS Criminal Investigation Division."  *Id.* ¶ 103.  These records, designated Bates page numbers 1263-1275, were released to the plaintiff in their entirety.  *Id.* ¶ 105.

### *iii.* The Search Conducted by Fraud Technical Advisor Vivian Dunn

Vivian Dunn was a Revenue Officer Fraud Technical Advisor in the IRS's Small Business/Self Employed Division's Office of Fraud Policy & Operations.  *See* Declaration of Vivian Dunn (ECF No. 66-12) ¶ 1 & n.1.  Dunn worked with Revenue Officer Odell Justice on the plaintiff's fraud referral.  *Id.* ¶ 1.

Part 3 of the plaintiff's FOIA request concerns the fraud referral now-retired Revenue Officer Odell Justice made in March 2005. *See* SMF ¶ 106. Dunn "typically did not [personally] maintain paper files relating to a fraud referral," but "if she was in possession of any paper files they would have been left with the Office of Fraud Policy and Operations for archiving when she was transferred away from that office in September 2010." *Id.* ¶ 109. Dunn "retained her laptop" following the 2010 transfer, but several "years after she was transferred . . . she deleted the electronic files and emails saved to her computer's hard drive relating to [her] work as a Revenue Officer Fraud Technical Advisor." *Id.* ¶ 110. Nevertheless, Dunn searched Microsoft Outlook and her computer hard drive for potentially responsive records; however, she found none. *See id.* ¶¶ 111-12.

### *iv*. Searches Conducted by Program Manger Victoria J. Boos

Victoria J. Boos was a Supervisory Internal Revenue Agent in the IRS's Small Business/Self Employed Division's Office of Fraud Policy and Operations in Mesa, Arizona. Declaration of Victoria J. Boos (ECF No. 66-11, "Boos Decl.") ¶ 1. In that role, she supervised Fraud Technical Advisors, *id.*, whose duties included "advis[ing] employees in the identification and development of potential fraud cases, as well as in determining if firm indications of fraud/willfullness are present and if criminal criteria are met," *id.* ¶ 4. She has "knowledge of the records that are maintained by the Office of Fraud Policy and Operations as a result of a fraud referral." *Id.* ¶ 6.

"The Office of Fraud Policy and Operations has at various times maintained copies of paper or electronic fraud development files, which would include copies of any fraud referrals and supporting documentation, in its archived files in accordance with its retention policy." SMF ¶ 115. The office's recordkeeping methods have changed over time. *See id.*

"The Office of Fraud Policy and Operations maintained an old Access database of all cases in fraud development status until the Fraud Information Tracking System ('FITS') database was deployed in or about April 2017."  Boos Decl. ¶ 5.  The Access database was used primarily "to track the status of a case in fraud development status, such as whether a referral of the case ha[s] been made to the IRS Criminal Investigation Division."  *Id.*  FITS is searchable by use of a taxpayer's name, TIN, or referral number.  *Id.* ¶ 10.

Before 2009, a Fraud Technical Advisor would maintain a case file for each of his or her respective cases, both electronic copies on a computer hard drive and paper copies at his or her work station.  SMF ¶ 116.  In addition, each advisor ensured that original records were provided to the Revenue Officer or other Collection Personnel for inclusion in the original paper administrative collection case file.  *Id.*

Beginning in 2009, upon conclusion of the Fraud Technical Advisor's participation in a case, he or she forwarded a paper copy of the fraud development file, including any fraud referral and supporting documentation, to his or her manager for archiving.  *Id.* ¶ 117.  The manager maintained a log on a Microsoft Excel spreadsheet of archived cases arranged by taxpayer name and TIN.  *Id.*  If a Fraud Technical Advisor's participation concluded after January 1, 2017, each fraud development file was scanned and stored electronically on a secured shared network drive for a period of three years after his or her participation ended.  *Id.* ¶ 118.  One manner in which an advisor's participation concludes is acceptance by the IRS Criminal Investigation Division of a fraud referral evidenced by a signed IRS Form 2797 (Referral Report of Potential Criminal Fraud Cases).  *Id.*  After the referral of the matter, the Office of Fraud Policy and Operations sends its original files to the referring Revenue Officer or the IRS Criminal Investigation Division.  *Id.* ¶ 119.

From the Access database, Boos learned that the plaintiff's case was referred to the IRS Criminal Investigation Division under referral number 20507413.  *Id.* ¶ 121.  She and her staff searched FITS using the plaintiff's name and referral number as search terms and the office's shared network drive using the plaintiff's name as a search term.  *Id.* ¶ 122.  In addition, file cabinets containing paper copies of fraud development files were searched using the plaintiff's name and referral number as search terms.  *Id.* ¶ 123.  No responsive records were located.  *Id.*

### *v.* Searches Conducted by Special Agent Dorethia Gregory

Dorethia P. Gregory was a Special Agent in the IRS Criminal Investigation Division's field office in Atlanta, Georgia.  Declaration of Dorethia P. Gregory (ECF No. 66-13, "Gregory Decl.") ¶ 1.  She was involved in the investigation of the plaintiff from March 2005 until she transferred to another position in 2006.  *Id.* ¶ 5.

Gregory searched Microsoft Outlook for potentially responsive records using "Houser" as the search term.  SMF ¶ 127.  She found none.  *See id.*  Her search of her computer's hard drive using "Houser" as the search term yielded "nine potentially responsive records, including copies of briefing documents related to a search warrant executed in November 2015."  *Id.* ¶ 128.  These nine records which amounted to 86 pages, designated as Bates page numbers 1177-1262, were released to the plaintiff, but the IRS withheld certain information under FOIA Exemptions 3, 6, 7(C), and 7(E).  *Id.* ¶ 130.  Gregory limited her search to electronic records because any paper records would have been given to the Special Agent to whom the case was assigned after her transfer or placed in the criminal investigation case file.  *Id.* ¶ 129.

### *vi.* The Search Conducted by Special Agent Sarah Kull

Sarah L. Kull was a Special Agent in the IRS Criminal Investigation Division's field office in Atlanta, Georgia.  Declaration of Sarah L. Kull (ECF No. 66-17, "Kull Decl.") ¶ 1.  She

"was involved with [the] plaintiff's criminal investigation" from March 2005 until the matter was assigned to another Special Agent in either 2005 or 2006.  *Id.* ¶ 5.

Kull searched Microsoft Outlook for potentially responsive records in a file labeled "Atlanta," which contained emails pertaining to cases assigned to her while she was a Special Agent in the Atlanta field office.  SMF ¶ 132.  In the "Atlanta" folder, Kull organized emails "within subfolders within case names."  *Id.*  She did not have a folder labeled "Houser," and her "broader search for the search term 'Houser' in both her current and archived emails" yielded no "records relating to her involvement in [the] plaintiff's criminal investigation."  *Id.*  Any paper records that she may have had would have been given to the new Special Agent assigned to the case or placed in the paper criminal investigation case file at the Atlanta field office.  *Id.* ¶ 134. And, any electronic records "were transferred from her laptop and provided to the Special Agent[] assigned to replace her."  *Id.*

### *vii*. Search Conducted by Supervisory Revenue Officer Lisa Taylor

Lisa W. Taylor is a Supervisory Revenue Officer in the IRS's Small Business/Self Employed Division in Atlanta, Georgia.  Declaration of Lisa W. Taylor (ECF No. 66-9, "Taylor Decl.") ¶ 1.  In this position, she oversees collection cases and methods for collecting taxes owed under the Internal Revenue Code.  *Id.*  Taylor has "a thorough understanding of the procedures for maintaining records related to collection cases," and knows how to search for records of ongoing and closed cases.  *Id.*  She is the former manager of Revenue Officer Odell Justice, who retired in March 2015.  *Id.* ¶ 3.

"Revenue officers are responsible for collecting taxes under the Internal Revenue Code." SMF ¶ 136.  They must "maintain []organized paper case file[s]," *id.*, which might contain "forms, case disposition documents, memoranda . . . , relevant tax returns, examination reports,

and correspondence with taxpayers or third parties, as well as other case-related documents generated or received," *id.*  Other information, including correspondence or communications between the officer and his supervisor, *see id.* ¶ 138, might be saved on a computer hard drive or Microsoft Outlook, *see id.* ¶ 137.  Although Taylor routinely does not maintain paper case files for collection cases, case information may be saved on her computer's hard drive or Microsoft Outlook.  *See id.* ¶¶ 138-39.

When Revenue Officer Odell Justice retired, Taylor "cleared out [his] workspace by ensuring that all case related files were properly transferred and [sent his] laptop to IRS Information Technology for storage and recordkeeping."  *Id.* ¶ 140.  Taylor searched her current and archived emails in Microsoft Outlook and her computer's hard drive using "Houser" as the search term and found no responsive records.  *See id.* ¶¶ 141-43.

### *viii.* Search of the Collection Case File

William Rowe, who as indicated earlier is an attorney with the Office of Chief Counsel, Procedure & Administration, Branch 7 of the IRS, *supra* at 5, conducted a search of the plaintiff's collection case file, which contained 594 pages of records, *see* SMF ¶¶ 145-46.  Rowe "located 43 pages of records . . . responsive to [the] plaintiff's requests, including [the] plaintiff's complete financial statement and a copy of [the] plaintiff's fraud referral."  *Id.* ¶ 146.  The 43 pages, designated Bates page numbers 1134-1176, were released to the plaintiff, but the IRS redacted 5 pages, relying on FOIA Exemption 3.  *Id.* ¶ 147.

### *ix.* Search of Odell Justice's Electronic Records

The laptop that former Revenue Officer Justice used remained with the IRS Information Technology Office ("IT") at the Atlanta field office.  *See id.* ¶¶ 144, 148.  From the laptop, IT collected emails and other electronic files saved between June 26, 2004, the date the collection

case opened, and March 31, 2015, the month when Justice retired.  *See id.* ¶¶ 149-50.  Using the search term "Houser," Rowe searched these electronic files for records responsive to the plaintiff's FOIA requests and identified 220 responsive records totaling 743 pages.  *Id.* ¶ 153.  Most of these 743 pages, designated Bates page numbers 1276-2019, were released to the plaintiff, but the IRS withheld 21 pages in full under FOIA Exemptions 3 and 5, and withheld 30 pages in part under FOIA Exemptions 3, 6 and 7(A).  *Id.* ¶ 154.

### *x.* Search of the Total Inventory Management System

Rowe learned that the Total Inventory Management System ("TIMS") might contain responsive records.  *Id.* ¶ 155.  A Supervisory Special Agent generally opens an electronic case file in TIMS for each criminal investigation and saves in this file copies of documents that he or she approves or signs.  *Id.* ¶ 156.  Only Supervisory Special Agents and Special Agents in Charge have access to TIMS.  *Id.*

Maisha C. Horton is a Supervisory Special Agent in the IRS' Criminal Investigation Division's field office in Atlanta, Georgia.  Declaration of Maisha C. Horton (ECF No. 66-14, "Horton Decl.") ¶ 1.  In this position, she oversees "investigations of potential violations of the Internal Revenue Code and related financial crimes."  *Id.*  Although she had no personal involvement in the plaintiff's criminal investigation, *id.* ¶ 10, she has access to TIMS, *id.* ¶ 8.

Using the plaintiff's name as the search term, Horton searched TIMS and located a case file for the plaintiff's criminal investigation.  SMF ¶ 159.  The case file contained 245 pages of records, including "copies of [the] plaintiff's complete financial statement, fraud referral, and search warrant affidavit, as well as several documents generated in response to, about, or concerning those underlying documents."  *Id.* ¶ 160.  In addition, these records included 30 pages of Forms 941, which are responsive to Part 1 of the plaintiff's FOIA requests.  *Id.*  Most of

these 245 pages, designated Bates page numbers 2093-2337, were released to the plaintiff, but

the IRS withheld 16 pages in full under Exemption 5, and withheld 52 pages in part under

Exemptions 3, 5, 6, 7(C) and 7(E).  *Id.* ¶ 161.

## II. STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must

view the evidence in the light most favorable to the non-moving party.  *Holcomb v. Powell*, 433

F.3d 889, 895 (D.C. Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150

(2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's

favor and accept the non-moving party's evidence as true.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or

denials."  *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at

248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue

of fact."  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999)

(Garland, J., concurring) (alteration in original) (quoting *Exxon Corp. v. FTC*, 663 F.2d 120,

126–27 (D.C. Cir. 1980)).  If the Court concludes that "the nonmoving party has failed to make a

sufficient showing on an essential element of [his] case with respect to which [he] has the burden

of proof," then the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).

"FOIA cases typically are resolved on a motion for summary judgment."  *Ortiz v. U.S.*

*Dep't of Justice*, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); *see also Defs. of Wildlife v. U.S. Border*

*Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "[The] FOIA requires federal agencies to

disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure." *Boyd v. U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" *Students Against Genocide*, 257 F.3d at 833 (omission in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III. ANALYSIS

### A. Adequacy of the Defendant's Searches for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (internal quotation marks omitted). To satisfy its burden to show that no genuine issue of material fact exists as to the adequacy of its search, the agency must show that each agency component "has conducted a search reasonably calculated to uncover all relevant documents," *Elliot v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg*

*v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)), and it may make this showing based on affidavits or declarations submitted in good faith, provided that the affidavits or declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citing *Goland*, 607 F.2d at 352). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with [the] FOIA." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). There is no requirement that an agency search every record system in response to a FOIA request; rather, it may limit its search to only those locations where responsive documents likely are maintained. *See Porter v. CIA*, 778 F. Supp. 2d 60, 69 (D.D.C. 2011) (holding that there "[was] no genuine issue as to the adequacy of the [agency's] search" given that it searched the "likely databases for responsive documents"). The question that a court must answer in considering the adequacy of an agency's search is "not whether other responsive documents may exist, but whether the search itself was adequate." *Moore v. Bush*, 601 F. Supp. 2d 6, 13 (D.D.C. 2009) (citing *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Belltranena v. Clinton*, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting *Truitt*, 897 F.2d at 542).

It is apparent from the Court's review of the Statement of Material Facts and all of the defendant's supporting declarations that the IRS conducted a reasonable search for records responsive to the plaintiff's three-part FOIA request. The Court need not repeat what is described above and explained in great detail in the IRS's submissions—the IRS's searches of electronic databases and paper files maintained by each office, Special Agent, Revenue Officer, and Fraud Technical Advisor involved in the investigation of the tax-related activities of the

plaintiff and the Five Corporate Entities covered by the plaintiff's FOIA requests, in databases, on laptops and computer hard drives, at the Federal Records Center, and in emails, file cabinets, and boxes of criminal case records.  As to Parts 1 and 3 of the plaintiff's FOIA request, the IRS's searches not only were reasonable under the circumstances, but also extended beyond the scope of what the FOIA demands.  Rowe identified and followed leads regarding where responsive records might be located, and the IRS searched for and released records that otherwise would not have been available to a FOIA requester.  Insofar as Part 2 of the request sought regulations and requested legal research, the IRS properly declined to conduct searches for such information. *See West v. Jackson*, 448 F. Supp. 2d 207, 212 (D.D.C. 2006), *aff'd*, No. 06-5281, 2007 WL 1723362 (D.C. Cir. Mar. 6, 2007).

### B. The FOIA Exemptions Claimed by the Defendant

Records responsive to the plaintiff's FOIA request are designated Bates page numbers 1 to 2337.  Rowe Decl. ¶ 136.  From these pages, the IRS has withheld certain information under FOIA Exemptions 3, 5, 6, 7(A), 7(C) and 7(E).  *See id.*

#### 1. FOIA Exemption 3 Withholdings

The FOIA disclosure requirement does not apply to matters that are:

> specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

### a. Tax Return Information

The IRS relies on Exemption 3 in conjunction with 26 U.S.C. § 6103(a), SMF ¶ 179,

which "provides that returns and return information shall remain confidential, except as

authorized by a provision of the [IRC]," Rowe Decl. ¶ 138.  According to the IRS, "[n]one of the

provisions of the [IRC] authorizes the release to plaintiff of . . . third party return information,

which would be revealed by disclosing the information redacted from the page[s]" that Rowe has

identified.  SMF ¶ 179; *see generally* Rowe Decl. ¶ 138.a.  The term "return information" means:

> a taxpayer's identity, the nature, source, or amount of his income,
> payments, receipts, deductions, exemptions, credits, assets,
> liabilities, net worth, tax liability, tax withheld, deficiencies,
> overassessments, or tax payments, whether the taxpayer's return
> was, is being, or will be examined or subject to other investigation
> or processing, or any other data, received by, recorded by, prepared
> by, furnished to, or collected by the Secretary with respect to a
> return or with respect to the determination of the existence, or
> possible existence, of liability (or the amount thereof) of any
> person under this title for any tax, penalty, interest, fine, forfeiture,
> or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

The IRS has redacted, for example, names, employer identification numbers, social

security numbers, and descriptions of third-party taxpayers, "including taxpayers who have cases

potentially associated with the criminal referral of the plaintiff, witnesses and their spouses"

from Integrated Collection System transcripts.  SMF ¶ 181; *see* Rowe Decl. ¶ 138.a. (Entries 1-7)

And, the IRS has redacted "a fraud narrative prepared by a Revenue Officer . . . , a witness

interview and a closing narrative list[ing] names and employer identification numbers of . . .

unrelated third-party taxpayers and those who may be related to the plaintiff and his criminal

referral."  SMF ¶ 182; *see* Rowe Decl. ¶ 138.a. (Entries 7-16)  In a third example, the IRS

redacted from an Integrated Collection System transcript "a description of the business purpose

of third-party taxpayers" obtained in order to determine the third party's tax liability.  Rowe

Decl. ¶ 138.a. (Entry 6).  Rowe declares that the withheld information is "return information"

under the IRC's definition of this term, *see* 26 U.S.C. § 6103(b), and that the "plaintiff has

neither submitted their written consent under [26 U.S.C. § 6103(c)], nor has he demonstrated a

material interest with respect to the return information under [26 U.S.C. § 6103(e)(1)]," SMF ¶

184.

### b. Impairment of Federal Tax Administration

The IRS also relies in Exemption 3 in conjunction with 26 U.S.C. § 6103(e)(7), SMF ¶

212, which provides:

> Return information with respect to any taxpayer may be open to
> inspection by or disclosure to any person authorized by this
> subsection to inspect any return of such taxpayer if the Secretary
> determines that such disclosure would not seriously impair Federal
> tax administration[,]

26 U.S.C. § 6103(e)(7).  From 51 pages of records, SMF ¶ 215, the IRS withholds "the names

and identities of third-party witnesses and informants who provided assistance to the IRS

Criminal Investigation Division in its criminal investigation of [the] plaintiff," Declaration of

Charles B. Christopher (ECF No. 66-6, "Christopher Decl.") ¶ 5.  According to the IRS, if it

released this information, it would "cause serious impairment of federal tax administration by

discouraging future cooperation from third parties, exposing the third parties to a risk of

annoyance or harassment based on their involvement in a criminal case, and chilling other

individuals from voluntarily coming forward with or providing information voluntarily to the

government."  SMF ¶ 216.

For example, the IRS has redacted information about witness interviews and the names of

interviewees.  *See* Christopher Decl. ¶ 6 (Entries 1, 4-6, 8-9).  From another document, the IRS

redacted "a chronology of events with respect to one of [the Five Corporate Entities] and . . .

statements about a conversation with a witness." *Id.* ¶ 6 (Entry 7).  And from other documents,

the IRS has withheld information about "the execution of a search warrant," which "includes

descriptions of interactions with witnesses during the IRS's execution of a search warrant."  *Id.* ¶

6 (Entry 4).  In each instance, the declarant concludes that release of this information "could

seriously impair the ability of the government to secure the collection of the proper tax and

penalties[.]"  SMF ¶ 217.

Based on the Court's review of the defendant's submissions, and absent any contrary

showing by the plaintiff, the Court concludes that the IRS properly redacted third-party return

information from the records identified by declarants Rowe and Christopher.  *See* Rowe Decl. ¶

138.a; Christopher Decl. ¶ 6.  "That [section] 6103 is the sort of nondisclosure statute

contemplated by FOIA exemption 3 is beyond dispute."  *Tax Analysts v. IRS*, 117 F.3d 607, 611

(D.C. Cir. 1997).  Information of the sort Rowe has identified properly is considered return

information, *see Currie v. IRS*, 704 F.2d 523, 531 (11th Cir. 1983), and the plaintiff has neither

presented waivers from the third parties whose information is implicated, nor has he

demonstrated a material interest in the withheld information.  And, through declarant

Christopher, the IRS has adequately demonstrated that the potential chilling effect upon

disclosure of the identities of witnesses and interviewees justifies reliance on Exemption 3 in

conjunction with 26 U.S.C. § 6103(e)(7).  *See Sea Shepherd Conservation Soc'y v. IRS*, 208 F.

Supp. 3d 58, 87–88 (D.D.C. 2016).  Therefore, the Court concludes that the IRS has properly

withheld such information.

### 2. FOIA Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorand[a] or letters that would

not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections

available to litigants in civil discovery; if material is not available in discovery, it may be

withheld from FOIA requesters."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508,

516 (D.C. Cir. 1996) (internal quotation marks omitted); *NLRB v. Sears, Roebuck & Co.*, 421

U.S. 132, 148 (1975).  Federal government agencies may therefore avail themselves of civil

discovery privileges to withhold information otherwise responsive to a FOIA request.  *See*

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  Here, the IRS

has withheld certain information under the deliberative process and attorney-client privileges.

*See generally* SMF ¶¶ 185-94.

### a. Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both

predecisional and deliberative.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997)

(quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en

banc)).  To show that a document is predecisional, the agency need not identify a specific final

agency decision; it is sufficient to establish "what deliberative process is involved, and the role

played by the documents at issue in the course of that process."  *Heggestad v. U.S. Dep't of*

*Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868).  A

document is "deliberative" if it "makes recommendations or expresses opinions on legal or

policy matters."  *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

The IRS withheld in full three draft documents, "including affidavits in support of the

application for the search warrant, the fraud referral, and fraud narratives prepared to accompany

the fraud referral."  SMF ¶ 187; *see generally* Rowe Decl. ¶ 140.a.  The preparation of the draft

affidavit preceded the IRS's decision to apply for a search warrant, and "consists of opinions,

though processes, and analyses with respect to the plaintiff's case[.]"  *See* Rowe Decl. ¶ 140.a. (Entry 1).  The second document is a partially completed and unsigned Form 2797 (Referral Report of Potential Fraud Cases) reflecting "the IRS's final decision-making with regard to referring [the] plaintiff's case for criminal fraud on April 8, 2005."  *Id.* ¶ 140.a. (Entry 2).  The third draft document, labeled "potential fraud narrative," was prepared by the Revenue Officer and was meant to accompany the Form 2797.  *Id.* ¶ 140.a. (Entry 3).  It, too, preceded the decision to refer the plaintiff's case to the Criminal Investigation Division on April 8, 2005, and reflects the agency's decision-making regarding the referral of the plaintiff's case.  *See id.*

In addition, the IRS withheld in part four email messages.  SMF ¶ 189.  The first, dated March 17, 2008, "discusses the Government's tentative timeframe for indicting [the] plaintiff," *id.*, and reflects the "thought processes and opinions" of Stanwood and Justice, Rowe Decl. ¶ 140.b. (Entry 1).  From an email dated September 4, 2009, the IRS withheld part of the email that discussed "whether [the] plaintiff's case file and ICS history may be released to [him]," SMF ¶ 190, and reflected Dunn's and Stanwood's thought processes and opinions "with respect to potentially applicable disclosure rules" and coordination with the IRS Disclosure office, Rowe Decl. ¶ 140.b. (Entry 2).  The third, a December 12, 2007 email from Stanwood to Igbalajobi, discussed "employment tax computations . . . requested for [the] plaintiff's case."  SMF ¶ 191.  It included "opinions and recommendations with respect to the timing of preparing the employment tax computations and referring [the] plaintiff's case to the Department of Justice."  Rowe Decl. ¶ 140.b. (Entry 3).  The fourth email, which was from Stanwood to Justice, "discusse[d] questions regarding [] payments [the] plaintiff made on his payroll tax liability for tax years 2004 and 2005."  SMF ¶ 192.  It preceded the IRS's final decision "with respect to determining the amount of payments."  Rowe Decl. ¶ 140.b. (Entry 4).

The final versions of these documents have already been released to the plaintiff.  SMF ¶ 187.  Although the IRS's investigation of the plaintiff has concluded, the IRS asserts that "disclosing pre-decisional communications would potentially result in disclosure of the IRS's pre-decisional selections of groups of facts, reasons, and rationales that were not the ultimate ground for the agency action."  Rowe Decl. ¶ 140.

### b. Attorney-Client Privilege

FOIA "Exemption 5 protects, as a general rule, materials which would be protected under the attorney-client privilege[.]"  *Coastal States Gas*, 617 F.2d at 862 (citing *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252–55 (D.C. Cir. 1977)).  For example, "confidential communications from clients to their attorneys made for the purpose of securing legal advice," *Tax Analysts*, 117 F.3d at 618 (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)), are protected under Exemption 5.  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."  *In re Lindsey*, 148 F.3d 1100, 1104 (D.C. Cir. 1998) (per curiam) (quoting *Tax Analysts*, 117 F.3d at 618) (additional citation omitted).

Here, the IRS withheld portions of "intra-agency memoranda that reflect the confidential legal communications between IRS Criminal Tax attorney[,] Larry D. Anderson[,] and the IRS Criminal Investigation Division concerning the execution of search warrants with respect to the criminal investigation of [the] plaintiff."  SMF ¶ 194.  From two memoranda, the IRS redacted confidential legal advice regarding the IRS Office of Chief Counsel's "evaluation of a proposed affidavit in support of an application for search warrants," Rowe Decl. ¶ 142.a (Entry 1), and his "evaluation of whether items seized during the execution of search warrants were seized within the scope of such search warrants," *id.* ¶ 142.a (Entry 2).

Based on the Court's review of the defendant's submissions, and absent any contrary showing by the plaintiff, the Court agrees with the government's positions that the information described above falls within the scope of FOIA Exemption 5, either under the deliberative process privilege or attorney-client privilege.  The IRS's reliance on Exemption 5 is therefore deemed proper.

### 3. FOIA Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that the . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

Although the IRS's supporting declarations devote no appreciable attention to the agency's law enforcement functions, it is apparent from the plaintiff's criminal convictions, the language of the plaintiff's FOIA request, and the nature of responsive records sought by the plaintiff that the IRS was engaged in law enforcement activities when it investigated the plaintiff and the Five Corporate Entities.  *See* Rowe Decl. ¶ 145 (identifying the plaintiff's criminal investigation as a law enforcement matter).  It therefore follows that records pertaining to the criminal investigation, *see, e.g.*, *id.*  ¶ 144.a (Entries 3-5 regarding a search warrant); *id.* ¶ 147.a. (Entries 1-3 regarding execution of a search warrant), and with regard to the agency's tax

collection activity, *see, e.g.*, *id.* ¶ 145.a. (Entries 1-8 regarding collection-related controls on the

accounts of the plaintiff or third-party taxpayer), were compiled for law enforcement purposes.

### a. FOIA Exemption 7(A)

FOIA Exemption 7(A) protects "records or information compiled for law enforcement

purposes, but only to the extent that the production of such law enforcement records or

information [] could reasonably be expected to interfere with enforcement proceedings[.]"  5

U.S.C. § 552(b)(7)(A).  The exemption is designed "to prevent disclosures which might

prematurely reveal the government's cases in court, its evidence and strategies, or the nature,

scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses

or fraudulent alibis or to destroy or alter evidence."  *Maydak v. U.S. Dep't of Justice,* 218 F.3d

760, 762 (D.C. Cir. 2000) (citing *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co*., 437

U.S. 214, 241–42 (1978)).

The IRS contends that it has withheld "information relevant to [the] plaintiff's criminal

investigation, a law enforcement matter," the release of which "may reasonably be expected to

interfere with pending, ongoing, or future enforcement proceedings[.]"  SMF ¶ 205.  According

to the IRS, disclosure of certain information "would harm the IRS's continuing collection

activity and monitoring of [the] plaintiff by making [the] plaintiff privy to collection-related

controls that have been placed on [the] plaintiff's or a related third-party taxpayer's tax account,

thereby revealing the IRS's collective plan of action[.]"  Rowe Decl. ¶ 145.  And, the IRS argues

that release of other information would "reveal the nature of meetings between the IRS and other

Federal agencies, thereby potentially harming pending, ongoing, or future collateral enforcement

proceedings."  *Id.*  These explanations adequately demonstrate that release of the withheld

information could reasonably be expected to interfere with the IRS's tax collection efforts or future enforcement proceedings.  Its reliance on FOIA Exemption 7(A) is therefore proper.

### b. FOIA Exemption 7(E)

FOIA Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Here, the IRS has withheld "information describing certain techniques used by the IRS to enforce revenue laws," and according to the IRS, its disclosure "would risk circumvention of the law."  SMF ¶ 210.

For example, the IRS redacted "an exhaustive list of equipment needed by IRS Criminal Investigation Division employees to execute a search warrant, including equipment used for countermeasures or alternative methods of gaining entry to a premise[s]."  Rowe Decl. ¶ 147.a. (Entry 1); *see id.* (Entry 3).  It also redacted "a description of the equipment the IRS uses as a countermeasure in the event that attack dogs . . . are encountered during the execution of a search warrant."  *Id.* ¶ 147.a (Entry 2).  According to the IRS, "[t]he list of equipment and specifics of countermeasures are not publicly known," SMF ¶ 211, and therefore release of the list "could reasonably be expected to risk circumvention of the law by impinging on the IRS's effective use of countermeasures and ability to gain entry to a premise," *id.*; *see* Rowe Decl. ¶ 147.a. (Entries 1-3).  The Court agrees that the IRS has adequately justified its decision to withhold its lists of equipment and information about countermeasures.

### c. FOIA Exemptions 6 and 7C)

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Protection under Exemption 6 is not limited to "a narrow class of files," and instead "cover[s] detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  In other words, Exemption 6 is designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information" maintained in government records, *id.* at 599, regardless of "the label on the file," *id.* at 601 (citation omitted).

Under FOIA Exemption 6, the IRS has withheld:

> the names of witness[es] and a *description of the assistance that the witnesses provided in [the] plaintiff's case*; the names and cell phone numbers of individuals peripherally involved with the investigations[,] including members of the IRS Criminal Investigation Division's search warrant team; an intern and student trainee; a Georgia Bureau of Investigations agent and a *description of the information provided by the agent during an interview*.

SMF ¶ 199 (emphasis added); *see generally* Rowe Decl. ¶ 144.b (Entries 2-21).

Exemption 7(C) protects from disclosure information found in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  This Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

From 69 pages of records, under FOIA Exemption 7(C), the IRS has redacted:

> (1) the names and background information of
> witnesses/confidential informants and *a description of the*
> *assistance that they provided in [the] plaintiff's case*; (2) the
> names and cell phone numbers of employees with peripheral
> involvement in the plaintiff's criminal investigation, including IRS
> Criminal Investigation Division employees who assisted in the
> execution of a search warrant, an intern, and student trainee; and
> (3) the name of a Georgia Bureau of Investigation agent and a
> *description of the information provided by the agent during an*
> *interview relating to[the] plaintiff's case.*

SMF ¶ 203 (emphasis added); *see generally* Rowe Decl. ¶ 146.a. (Entries 1-14).

Based on the Court's review of the defendant's submissions, it appears that the IRS is

withholding more information than is covered by either FOIA Exemption 6, or FOIA Exemption

7(C), or both.  For example, the IRS has withheld "the name of a Georgia Bureau of

Investigations Agent and a description of the information provided by the agent during an

interview" under FOIA Exemption 6, Rowe Decl. ¶ 144.b. (Entry 9), and under FOIA Exemption

7, *id.* ¶ 146.b. (Entry 6).  While redacting the agent's name from a law enforcement record is

permissible, *see Blackwell*, 646 F.3d at 41 ("As a result of Exemption 7(C), FOIA ordinarily

does not require disclosure of law enforcement documents (or portions thereof) that contain

private information."), the IRS offers no rationale for withholding the information the agent

provided.  Similarly, the decision to withhold a witness's name under FOIA Exemptions 6 and

7(C) may be appropriate, *see* Rowe Decl. ¶ 144.a. (Entry 12); *id.* ¶ 146.a. (Entry 9), but the IRS

does not state why it is withholding a description of the assistance the witness provided under the

same FOIA Exemptions.

Because the defendant has failed to provide adequate explanations as to why some of the

withheld information falls within the scope of the claimed exemptions, the Court finds that the

IRS has not met its burden with respect to FOIA Exemptions 6 and 7(C).  Accordingly, as to

these withholdings, the defendant's motion is denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the defendant has conducted a reasonable search for records responsive to the plaintiff's FOIA request and properly relies on Exemptions 3, 5, 7(A) and 7(E) to withhold certain information.  Therefore, as to these matters, the IRS has satisfied its FOIA obligations.  However, the IRS has not justified its reliance on FOIA Exemptions 6 and 7(C) for the withholding of some of the information requested by the plaintiff.  Accordingly, it is hereby

ORDERED that the Defendant's Motion for Summary Judgment [66] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE; it is

FURTHER ORDERED that the plaintiff's Third Motion for an Extension of Time to Answer Defendant's Motion for Summary Judgment [73] is DENIED AS MOOT; and it is

FURTHER ORDERED that the defendant shall, if appropriate, file a renewed motion for summary judgment not later than October 30, 2020.[13]

**SO ORDERED** this 14 day of September, 2020.

/s/
REGGIE B. WALTON
United States District Judge

---

[13] The defendant's failure to renew its motion for summary judgment will result in the issuance of an Order requiring the release of the information withheld under FOIA Exemptions 6 and 7(C).